# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Harry James,  )  | |
|     Plaintiff,  ) | |
| ) | Civil Action No. 3:22-cv-106 |
| v.  ) | |
| ) | **Complaint** |
| John Martin Brant and Gregory Allan ) | |
| Garlock,  ) | **JURY TRIAL DEMANDED** |
|     Defendants. | |

## AMENDED COMPLAINT

AND NOW COMES, Plaintiff, Harry James, by and through his attorney, Kukoyi Law Firm, LLC and Lanre Kukoyi, Esquire, avers as follows:

### Jurisdiction and Venue

1. This action arises in part under 42 U.S.C. § 1983.

2. Jurisdiction over Plaintiff's claims is conferred on the Court by 28 U.S.C. §§1331, 1343 and 1367.

3. Venue in this District is proper under 28 U.S.C. §1391(b).

### The Parties

4. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

5. Plaintiff, Harry James (hereinafter "Plaintiff" or "James") is a resident of Johnstown, Pennsylvania, within the Western District of Pennsylvania.

6. Defendant, John Martin Brant (hereinafter "Defendant Brant"), is an adult individual who, at all times material to this action, was a full time police officer in Brownsville Borough, Fayette County and part time officer with Redstone

Township, Fayette County, within the jurisdiction of the Western District of Pennsylvania. He is being sued in his individual capacity.

7. On January 14, 2018 ("Incident date"), he was working as a Sergeant for Redstone Township.

8. Defendant, Gregory Allan Garlock (hereinafter "Defendant Garlock"), is an adult individual who, at all times material to this action, was a police officer for the Luzerne Township Police Department. He is being sued in his individual capacity.

9. At all times relevant, Defendants Brant and Garlock (collectively "Defendant Officers") were acting under color of law.

**Facts**

10. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

11. On the Incident date, Defendant Officers responded to a call from a Dairy Queen location in Brownsville, Fayette County, Pennsylvania that a customer was acting strange. Plaintiff was the customer.

12. Based on the testimonies of Defendant Officers, Plaintiff was charged on January 14, 2018 with two counts of Aggravated Assault, which are felonies in Pennsylvania, two counts of Terroristic Threats, two counts of Simple Assault, three counts of Resisting Arrest, one count of Disorderly Conduct for engaging in fighting and two counts of Summary Harassment.

13. Plaintiff suffered injuries such as a broken rib and cuts to his head as a result of his encounter with Defendant Officers.

14. After being treated at the Uniontown Hospital for his injuries, Plaintiff was transferred to East End Behavioral Health Hospital ("East End") for a psychiatric evaluation and he eventually spent thirty days there.

15. He was discharged from East End on February 13, 2018 and was placed into custody by The Pennsylvania State Police in Belle Vernon ("PSP Belle Vernon") and confined to the Fayette County Prison.

16. After posting a bond of $35,000, he was released on March 8, 2018, spending a total of twenty-three days in jail.

**Affidavit of Probable Cause**

17. According to the Affidavit of Probable Cause in the Police Criminal Complaint, at approximately 5:06pm on January 14, 2018, Pennsylvania were forwarded a call from Fayette County 911. This was the call from the Dairy Queen regarding strange behavior from Plaintiff while in their restaurant.

18. However, because PSP Belle Vernon did not have any cars in the vicinity of the restaurant, they requested an assist from Redstone Township Police Department.

19. Defendant Officers arrived on scene together and Defendant Brant claimed he recognized Plaintiff through the restaurant's window because he had recent dealings with Plaintiff.

20. Plaintiff was said to have become more agitated when he saw Defendant Officers, and at a point stood in front of the doorway when Defendant Officers approached the door to the restaurant, held his wooden cane up in the air and

yelled at Defendant Officers, "This is a spiritual war, I am going to kill you guys!"

21. Defendant Brant then claimed that he began to call Plaintiff by name and said "Harry, put the cane down." Defendant Brant claimed he made this request about eight times before Plaintiff complied but this was short-lived as Plaintiff began waving the cane around again.

22. Defendant Brant claimed that it was at this point he opened the door and fired his Taser at Plaintiff due to Plaintiff's non-compliance with verbal commands, and Plaintiff fell down on his side.

23. Defendant Garlock then attempted to handcuff Plaintiff while he was on his side but Plaintiff resisted, grabbing Defendant Garlock's gun belt, swinging and kicking him.

24. Defendant Brant then fired his Taser at Plaintiff a second time but it was ineffective. Near simultaneously, Plaintiff swung his cane at Defendant Garlock, striking Defendant Garlock in the right ribs. Defendant Garlock then sprayed Plaintiff's eyes with pepper but this also did not have any effect on Plaintiff.

25. Defendant Garlock claimed he suffered an injury to one of his left fingers during the scuffle with Plaintiff.

26. Defendant Garlock also claimed that he struck Plaintiff a few times with his baton because Plaintiff kept going for Defendant Garlock's gun belt.

27. After numerous continuances, Plaintiff waived his preliminary hearing on November 19, 2019.

**Omnibus Pretrial Hearing**

28. On March 30, 2021, an Omnibus Pretrial Hearing, based on Plaintiff's Defense Counsel Petition for a Writ of Habeas Corpus, was held before Judge Wagner at the Fayette County Court of Common Pleas to examine whether probable cause existed in order for the case against Plaintiff to go ahead.

29. Defendant Brant was the sole witness that testified on behalf of the Commonwealth of Pennsylvania and his testimony was similar to what was contained in the Affidavit of Probable Cause.

30. He testified that Defendant Officers gave Plaintiff numerous instructions to put his cane down, a cane that had a metal ball on the end of it and was being held in a threatening manner by Plaintiff.

31. Defendant Brant also testified that there were people in the in the back of the store and after motioned to them to leave, Defendant Officers entered the foyer and used his Taser on Plaintiff.

32. Defendant Brant described Plaintiff as fighting like cats in a bag when Defendant Garlock attempted to handcuff him.

33. He also said he sustained an injury to his left thumb, while Defendant Garlock sustained a cut to his small finger along with right rib pain.

34. Defendant Brant testified that he was aware that the January 14, 2018 incident was recorded on the restaurant security camera. This video footage was played by Defense Counsel at the Omnibus Pretrial hearing.

35. Lastly, he testified that he was fully aware that Plaintiff had numerous mental health challenges because of past interactions with Plaintiff due to disturbances

Plaintiff caused. Therefore, he utilized his crisis intervention/advocate for mental health training, and did his best to keep the stimuli as low as possible, tried to relate to the Plaintiff and tried to deescalate the situation.

**Judge Wagner's Opinion**

36. In an Opinion filed May 24, 2021 (the "Opinion"), Judge John F. Wagner noted that the video footage showed that there were no customers present in the vicinity of Plaintiff but there were employees behind the counter. Furthermore, Plaintiff's walking cane appeared to be for balance and was not waved threateningly towards Defendant Officers.

37. Judge Wagner noted that Plaintiff stood several feet from the entrance door while Defendant Officers were still outside. He then backed up to the chair he had been sitting in previously. Plaintiff was not seen on video raising his walking cane, shaking it at the officers or holding it in a threatening manner as was claimed in the Affidavit of Probable Cause or as Defendant Brant testified to at the Omnibus Pre-trial Hearing.

38. As Plaintiff was sitting down, Defendant Brant rushed into the restaurant and immediately used his Taser on Plaintiff. This made Plaintiff fall to the ground while still holding his walking cane. Defendant Officers pounced on him instantly and began to struggle with him.

39. Eventually, Plaintiff was able to sit up and had his arms out to the side with his hands open and palms out. Rather than taking this an opportunity to deescalate things, Defendant Officers only ratcheted up the violence. Specifically, De-

fendant Brant fires his Taser on Plaintiff a second time while Defendant Garlock used the pepper spray on Plaintiff.

40. A third officer was seen coming into the restaurant to render assistance and one of the three officers could be seen punching Plaintiff at least twice even though he was being restrained face down on the ground by the three police officers (This was actually Defendant Garlock). Plaintiff was then handcuffed.

41. Judge Wagner also noted that Defendant Brant's testimony "did not correspond or support the evidence on the video."

42. He further noted that the prosecution failed to provide any explanation regarding why Defendant Brant's testimony "flies in the face" of the video evidence.

43. The Opinion also stated that the conduct of Defendant Officers was immediately aggressive towards Plaintiff, which clearly was a contradiction of Defendant Brant's testimony that he utilized his crisis intervention and de-escalation training, and that it took about two to three minutes before the making decision to use a Taser on Plaintiff.

44. Plaintiff had backed up and was attempting to sit in his chair when Officer Brant rushed into the restaurant and without making any effort at communicating with Plaintiff, deployed his Taser on Plaintiff.

45. Judge Wagner found that the police escalated their encounter with Plaintiff without cause and that there was no probable cause to support, and thus dismissed all of the charges against Plaintiff.

46. Judge Wagner's Opinion is attached as Exhibit A.

## COUNT I
## Fourth Amendment claim pursuant to 42 U.S.C. § 1983 for Malicious Prosecution against Defendants Brant and Garlock.

47. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

48. Defendants Brant and Garlock knowingly provided false information for the Affidavit of Probable Cause. Therefore, Defendant Brant and Defendant Garlock can be considered as initiating the subsequent criminal proceedings against Plaintiff, or at the very least influencing it.

49. Plaintiff spent twenty-three days in jail before posting a $35,000 bond after he was arrested pursuant to the Affidavit of Probable Cause. The conditions of his bail included that he had to notify the court and related authorities of any change in his contact information within 48 hours, show up in court at all required times, submit to the authority of the bail authority, and undergo mandatory evaluation for drug and alcohol use, mental health evaluation (despite the fact that he had been at East End for psychiatric evaluation for thirty days from January 14, 2018 to February 13, 2018 and had been released) and/or anger management.

50. He was also assigned a probation/parole officer and he had to make probation/parole office aware of his travel plans and he was released under the supervision of his sister.

51. When viewed as a whole, the restrictions plus the time he spent in the county prison and at East End amounted to a seizure under the Fourth Amendment of the Constitution of the United States (hereinafter "Fourth Amendment").

52. If Plaintiff had failed to obey any of the bail conditions, he may have faced additional criminal charges.

53. Lastly, he was facing very serious charges such that when he was released on bail, he was obligated to appear in court in order to clear his name.

54. The deprivation of liberty that accompanied the criminal prosecution Plaintiff had to suffer is the type of constitutional injury the Fourth Amendment is intended to redress because it protects against unreasonable search and seizure.

55. To establish a claim of malicious prosecution under the Fourth Amendment, Plaintiff must first prove that the Defendants initiated criminal proceeding against him. Secondly, Plaintiff must show that there was no probable cause to initiate the proceeding. Thirdly, the criminal proceeding must end in Plaintiff's favor. The fourth element is that the Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice. Lastly, Plaintiff must show he suffered damages.

56. Defendant Officers provided all of the information for the Affidavit of Probable Cause, so they caused the criminal proceedings to be initiated against Plaintiff.

57. With regards to the second and third elements Plaintiff's claim, the criminal proceeding against him ended affirmatively in Plaintiff's favor.

58. Additionally, the Opinion made it abundantly clear that the dismissal of the criminal proceeding against Plaintiff was because the criminal proceeding had been initiated without probable cause.

59. Though only Defendant Brant testified at the Omnibus Pretrial Hearing, he essentially restated the Affidavit of Probable Cause that had been filed with the Criminal Complaint, an Affidavit that was based on statements he and Defendant Garlock made to the Affiant, Trooper Melinda Churney.

60. Judge Wagner's Opinion made it clear that the relevant parts of Defendant Brant's testimony at the Omnibus Pretrial Hearing were in "direct contravention" to what was shown on the restaurant's security footage.

61. In other words, Defendant Brant lied under oath.

62. The Affidavit of Probable Cause was based on falsehoods and inaccuracies.

63. Defendant Officers knew the charges against Plaintiff were groundless when they provided the false information sufficient for the Affidavit of Probable Cause, but the fact that Defendant Brant persisted to lie under oath clearly indicates that they acted with a malicious purpose or for a purpose other than bringing Plaintiff to justice.

64. This false testimony resulted in the criminal proceeding against Plaintiff and he was effectively "seized" as long as the prosecution against him remained pending because his liberty rights were effectively curtailed by the bail conditions.

65. This constitutes a civil rights violation pursuant to 42 U.S.C. §1983.

66. A direct result of Defendants' wrongful conduct is that Plaintiff suffered significant emotional pain and suffering.

67. Plaintiff also experienced physical pain and suffering as was literally beaten up by Defendant Officers when he was Tasered, punched, hit with baton and generally manhandled.

68. He experienced the loss of family companionship during the time he was in East End and Fayette County Prison.

69. He also suffered grievous harm to his reputation as the initial encounter at the Dairy Queen was publicized in the local newspapers and news stations. Plaintiff did not have a criminal record until the charges made pursuant to the false statements made by Defendant Officers.

70. The entire episode was highly embarrassing and humiliating to Plaintiff.

71. Plaintiff also suffered from the inability to earn a livelihood during the pendency of the criminal proceeding.

72. The actions of the Defendants were intentional, wanton, malicious and completely indifferent to Plaintiff's rights, therefore entitling Plaintiff to punitive damages.

73. Plaintiff's life was significantly disrupted and he experienced great emotional strain during the process of clearing his name.

WHEREFORE, Plaintiff asks for judgment in his favor, and against Defendant John Martin Brant and Defendant Gregory Allan Garlock for compensatory damages of $2,500,000 plus costs, reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other relief the Court deems appropriate including punitive damages.

## COUNT II

### Due Process Violation under the Fourteenth Amendment – Fabricated Evidence against Defendants Brant and Garlock.

74. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

75. The Fourteenth Amendment to the Constitution of the United States of America (hereinafter "Fourteenth Amendment") provides, among others, that any criminal proceeding against a person shall only be done with the due process of law.

76. The due process clause of the Fourteenth Amendment thus protects the right to be free from falsified evidence that lead to the wrongful initiation of criminal proceedings.

77. Thus, Falsified evidence is an affront to due process of law and its use by the Defendant Officers undermined the fundamental fairness that Plaintiff was guaranteed pursuant to the Fourteenth Amendment.

78. In the instant matter, absent the falsified evidence by Defendants Brant and Garlock, Plaintiff would not have been criminally charged.

79. The false evidence used was both the but-for and proximate causes of the criminal proceedings against Plaintiff.

80. Defendant Officers were aware of the falsity of the evidence against Plaintiff and thus knew that their testimonies incorrect.

81. Plaintiff was injured at the point when falsified evidence was used to initiate criminal proceedings against him and this injury continued through the pendency of the proceedings.

82. The actions of the Defendants in using falsified evidence were intentional, wanton, malicious and completely indifferent to Plaintiff's rights, therefore entitling Plaintiff to punitive damages.

83. Plaintiff suffered reputational harm, significant mental anguish and emotional distress.

WHEREFORE, Plaintiff asks for judgment in his favor, and against Defendants Brant and Garlock for compensatory damages of $2,500,000, punitive damages and any other relief the Court deems appropriate.

## COUNT III

### 42 U.S.C. § 1983 Conspiracy Claim against Defendants Brant and Garlock.

84. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

85. In Order to succeed on a 42 U.S.C. § 1983 conspiracy claim, a Plaintiff must show that the Defendant conspired with another to deprive him of his constitutional right and at least one of the co-conspirators engaged in an overt act in furtherance of the conspiracy and that act injured Plaintiff, and he suffered a deprivation of a constitutional right or privilege.

86. In the Instant matter, Defendant Officers conspired to provide a false story about what actually transpired and bring false charges against Plaintiff.

87. The conspiracy is demonstrated by the fact that neither of the Defendant Officers came offered to correct the false story. That they both stuck to the story strongly gives rise to the inference that they both agreed on the false story.

88. They provided this false story to the Affiant of the Affidavit of Probable Cause, which was an overt act in furtherance of the conspiracy.

89. The falsehoods were used to seize Plaintiff violating the Fourth Amendment and to fabricate evidence against him in the criminal proceeding in violation of the Due Process Clause of the Fourteenth Amendment.

90. Plaintiff was injured by the falsified evidence as it was used to initiate criminal proceedings against him and this injury continued through the pendency of the proceedings.

91. The conspiracy of the Defendants to use false evidence was intentional, wanton, malicious and completely indifferent to Plaintiff's rights, therefore entitling Plaintiff to punitive damages.

92. Plaintiff suffered reputational harm, significant mental anguish and emotional distress.

WHEREFORE, Plaintiff asks for judgment in his favor, and against Defendants Brant and Garlock for compensatory damages of $2,500,000, punitive damages and any other relief the Court deems appropriate.

## COUNT IV

### State Law Malicious Prosecution

93. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

94. Under Pennsylvania law, a Plaintiff in a malicious prosecution claim has to show that the Defendant (1) instituted criminal proceedings against him without probable cause (3) with malice (4) and the criminal proceeding terminated

in Plaintiff's favor.

95. As outlined in the preceding paragraphs, Defendant Brant and Garlock caused criminal proceedings to be instituted against Plaintiff without probable cause.

96. Additionally, the Affidavit of Probable Cause was based on falsehoods and Defendant Brant persisted with these falsehoods while under oath. This indicates clearly that Defendant Officers acted maliciously, either impliedly due to the lack of probable cause or intentionally because of the deliberate falsehoods.

97. Lastly, the criminal proceeding didn't just end in Plaintiff's favor but it did so affirmatively with Judge Wagner declaring that the prosecution failed to present credible evidence and that Defendant Brant's sworn testimony was "in direct contravention" to the security footage of the incident.

98. The actions of the Defendants were intentional, wanton, malicious and completely indifferent to Plaintiff's rights, therefore entitling Plaintiff to punitive damages.

99. Plaintiff suffered reputational harm, significant mental anguish and emotional distress.

WHEREFORE, Plaintiff asks for judgment in his favor, and against Defendants Brant and Garlock for compensatory damages of $2,500,000, punitive damages and any other relief the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby makes a demand for a trial by jury on all triable issues.

Date: June 22, 2022                                   Respectfully submitted,

/s/ Olanrewaju Kukoyi
Lanre Kukoyi, Esq.
PA I.D. # 315955
Kukoyi Law Firm, LLC
510 Washington Ave,
Carnegie, PA 15106
Voice (412) 200-2440
Facsimile (412) 502-5105
kukoyi@kukoyilaw.com