IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL JAMES,** *Administrator of the Estate of Harry James,* | ) | Case No. 3:22-cv-106 |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| **JOHN MARTIN BRANT and GREGORY ALLAN GARLOCK,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Gregory Allan Garlock's ("Officer Garlock") Motion to Dismiss Plaintiff Harry James's[1] ("James") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14). The issues in Officer Garlock's Motion have been fully briefed, (ECF Nos. 15, 22, 25), and the Motion is ripe for disposition. For the following reasons, the Court **GRANTS** Officer Garlock's Motion.

## I.   Jurisdiction and Venue

The Court has subject-matter jurisdiction over James's 42 U.S.C. § 1983 claims asserted at Counts I, II, and III of his Complaint because they arise under federal law. *See* 28 U.S.C. §§ 1331, 1343(a)(3). The Court also has subject-matter jurisdiction over James's Pennsylvania state law

---

[1] The Court notes that Harry James passed away in April 2023, nearly a year after this suit was filed. (*See* ECF No. 40). Daniel James, Harry James's son and Administrator for his Estate, expressed his desire to continue with this suit. (*Id.*). Accordingly, Daniel James was substituted as Plaintiff in this case pursuant to Federal Rule of Civil Procedure 25(a)(1). (*See* ECF No. 41).

claim asserted at Count IV of his Complaint because it arises from the same case or controversy as his § 1983 claims. *See id.* § 1367.

Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this suit occurred in the Western District of Pennsylvania.

## II.   Background

The following facts are drawn from James's Complaint and the Exhibit attached thereto.[2] (ECF No. 1). The Court construes the Complaint in the light most favorable to James, and takes the factual allegations therein as true, as it must in ruling on a motion to dismiss.

On January 14, 2018, two law enforcement Officers—Sergeant John Martin Brant ("Sergeant Brant") and Officer Garlock (collectively, "Defendant Officers")—were notified of a 911 call from a Dairy Queen in Fayette County, Pennsylvania, explaining that a customer was acting strange. (*Id.* ¶ 11). James was the customer. (*Id.*). The events that followed Defendant Officers' arrival resulted in James being sent to the hospital and later charged with numerous crimes. (*Id.* ¶¶ 11–14).

An Affidavit of Probable Cause (alternatively, the "Affidavit"), which was prepared on January 14, 2018, and signed by Trooper Melinda Churney, described what transpired in the Dairy Queen from Defendant Officers' perspective. (*Id.* ¶¶ 17, 56). The Affidavit, in full, provides:[3]

---

[2] The Court notes that although James's Complaint is titled "Amended Complaint[,]" (ECF No. 1), James later clarified that his Complaint was simply "erroneously titled[,]" (ECF No. 22 at 1 n.1). Moreover, the Court explains below why it properly considers the Exhibit attached to James's Complaint at this stage of the proceeding. *See infra* Section IV.A.

[3] As the Court will later explain, the Court can properly consider the Affidavit of Probable Cause, which was attached as an Exhibit to Officer Garlock's Motion to Dismiss, at this stage of the proceeding. *See infra* Section IV.B. Moreover, the contents of the full Affidavit are relevant to the Court's eventual analysis of James's malicious prosecution claim. *See infra* Section V.A.3. As such, the Court provides the full text of the Affidavit in outlining the relevant background.

On 1/14/18 at approximately 1706 hours, PSP Belle Vernon was forwarded a call from Fayette County 911 from the Manager at the Dairy Queen, 540 National Pike East, Brownsville, PA 15417, Redstone Township, Fayette County. The Manager had reported that there was a male (defendant) in the restaurant acting strange. PSP Belle Vernon didn't have any cars in the area; therefore, Redstone Township Police Department was called to assist until we could get on scene. On 1/14/1[8] at approximately 1715 hours, John Martin BRANT (victim), who is a Sergeant with the Redstone Township Police Department and Gregory Allan GARLOCK (victim), who is an Officer with the Luzerne Township Police Department arrived on scene together.

As Sgt. BRANT and Ofc. GARLOCK got out of their patrol vehicles, Sgt. BRANT recognized the male, who he was able to identify as Harry JAMES (defendant) from having recent dealings with him. Sgt. BRANT saw the male seated near a window seat. As soon as the defendant saw the Officers, he stood up from a seated position and began yelling at the Officers and throwing his hands up in the air at them from inside of the window. As Sgt. BRANT and Ofc. GARLOCK approached the door to enter the restaurant, the defendant walked towards the door and stood in front of the doorway. The defendant had his wooden cane up in the air and was yelling at the Officers, "This is a spiritual war, I am going to kill you guys!" Sgt. BRANT then started calling the defendant by his name, by saying, "Harry, put the cane down." Sgt. BRANT related that he probably told the defendant to put his cane down approximately eight times. Sgt. BRANT related that the defendant then put his cane to his side, so he thought that he was going to calm down. Sgt. BRANT related that the defendant then began waiving his cane around again. Sgt. BRANT related that he then opened the double door and tazed the defendant because he was not complying with his verbal commands. Sgt. BRANT related that one tazer probe struck the defendant in his navel area and one struck him in his stomach. Sgt. BRANT related that the defendant then staggered and fell down on his side.

Ofc. GARLOCK then attempted to handcuff the defendant as he was lying on his side. The defendant then began resisting arrest and started grabbing at Ofc. GARLOCK and kicking him. The defendant was grabbing Ofc. GARLOCK's gunbelt and was swinging at him. Sgt. BRANT attempted to taze the defendant again, but it had no [e]ffect. The defendant then took his cane and swung it at Ofc. GARLOCK, striking the area of his right ribs. Ofc. GARLOCK then pepper sprayed the defendant in the area of his eyes, which had no [e]ffect on the defendant. The defendant continued yelling and grabbing at the officer's, saying things like, "This is a war!" Ofc. GARLOCK related that his glasses fell off during the scuffle and he skinned his left pinky knuckle, causing it to bleed. Ofc. GARLOCK further related that when the defendant kept going for his belt, he grabbed his baton and struck the defendant a few times with it on his side, which was not [e]ffective. Ofc. GARLOCK related that he was finally able to get one cuff around the

defendant's wrist and used the other handcuff to hold the defendant down until Officer RUSSEL with the California Borough Police Department arrived on scene and assisted in getting the defendant handcuffed.

I, Your affiant, respectfully request that a warrant be issued for the defendant, who is currently in Uniontown Hospital.

(ECF No. 15-1).

According to James, Defendant Officers provided all the information contained in the Affidavit. (ECF No. 1 ¶ 56). The Affidavit ends with James being detained, but James explains that he was subsequently treated at a local hospital for injuries he suffered as a result of his encounter with Defendant Officers, including a broken rib and cuts on his head. (*Id.* ¶¶ 13–14). James was then transferred to a different facility where he underwent a psychiatric evaluation. (*Id.* ¶ 14).

While James received treatment, he was charged on January 14, 2018, with the following offenses based on the Affidavit of Probable Cause: (1) two counts of Aggravated Assault in violation of Pa. Cons. Stat. § 2702(a)(3); (2) two counts of Terroristic Threats in violation of Pa. Cons. Stat. § 2708(a)(1); (3) two counts of Simple Assault in violation of Pa. Cons. § 2701; (4) three counts of Resisting Arrest in violation of Pa. Cons. Stat. § 5104; (5) one count of Disorderly Conduct in violation of Pa. Cons. Stat. § 5503(a)(1); and (6) two counts of Summary Harassment in violation of Pa. Cons. Stat. § 2709(a)(1). (*Id.* ¶ 12; ECF No. 1-1 at 2).

Therefore, when James was discharged from the hospital on February 13, 2018, he was placed in state custody and confined to the Fayette County Prison. (*Id.* ¶ 15). James was released on March 8, 2018, after posting a bond of $35,000 and spending a total of twenty-three days in jail. (ECF No. 1 ¶ 16).

On March 20, 2021, in response to a Petition for a Writ of Habeas Corpus James filed, an Omnibus Pretrial Hearing was held before Judge Wagner at the Fayette County Court of Common Pleas. (*Id.* ¶ 28). Sergeant Brant, but not Officer Garlock, testified at the hearing. (*Id.* ¶ 29).[4] Further, surveillance camera footage of James's encounter with Defendant Officers at the Dairy Queen was played at the hearing. (*Id.* ¶ 34).

Just over two months after the Omnibus Pretrial Hearing, on May 24, 2021, Judge Wagner issued an opinion dismissing all charges pending against James. (*Id.* ¶¶ 36, 45). Judge Wagner first found that, after viewing the video, James was not waving his walking cane towards Defendant Officers in a threatening manner. (*Id.* ¶ 36–37). Moreover, Judge Wagner found that James did not hit or kick Defendant Officer during the encounter. (ECF No. 1-1 at 5). Judge Wagner also indicated that James was sitting down, or beginning to sit down, when Sergeant Brant entered the Dairy Queen and tased him. (ECF No. 1 ¶ 38). All told, because Judge Wagner concluded that the Commonwealth failed to establish sufficient probable cause that James committed the charged offenses, he dismissed all charges. (ECF No. 1-1 at 3, 6).[5]

In part predicated on the facts contained in Judge Wagner's opinion that contradict those provided in the Affidavit of Probable Cause, James alleges that the Affidavit "was based on falsehoods." (ECF No. 1 ¶ 62). To that end, James also alleges that he did not go for or grab

---

[4] Because only Officer Garlock has moved to dismiss James's Complaint, the Court does not recount Sergeant Brant's testimony at the Omnibus Pretrial Hearing, which has no relevance to the claims as asserted against Officer Garlock.

[5] The Court notes that it only recounts the portions of Judge Wagner's opinion—which was attached as an Exhibit to James's Complaint—that are relevant to James's claims against Officer Garlock. Like the Omnibus Pretrial Hearing, portions of the opinion may be relevant to James's claims against Sergeant Brant. But because only Officer Garlock has moved to dismiss, the Court only includes the information relevant to the claims as asserted against him.

at Officer Garlock's gun belt, which the Affidavit states was the precursor to Officer Garlock's use of his pepper spray and baton. (ECF No. 1 ¶ 36; ECF No. 22 at 3). Relatedly, James also alleges that he did not strike Officer Garlock with his walking cane, or kick Officer Garlock, as the Affidavit states.

On June 30, 2022, James filed his Complaint against Defendant Officers in the United States District Court for the Western District of Pennsylvania. (ECF No. 1). In his Complaint, James asserts four claims against Defendant Officers in their individual capacities: (1) a Fourth Amendment malicious prosecution claim pursuant to § 1983 at Count I, (*Id.* ¶¶ 47–73); (2) a fabricated evidence claim pursuant to the Due Process Clause of the Fourteenth Amendment at Count II, (*Id.* ¶¶ 74–83); (3) a § 1983 conspiracy claim at Count III, (*Id.* ¶¶ 84–92); and (4) a state law malicious prosecution claim at Count IV, (*Id.* ¶¶ 93–99).

On September 16, 2022, Officer Garlock filed a Rule 12(b)(6) Motion to Dismiss James's Complaint for failure to state a claim against him, along with a brief in support of that Motion. (ECF Nos. 14, 15). On October 6, 2022, James filed a brief in response to Officer Garlock's Motion. (ECF No. 22). And on October 24, 2022, Officer Garlock filed a reply to James's response to his Motion to Dismiss. (ECF No. 25).

## III.  Legal Standard

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[6] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth.") (citation omitted).

Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.  Scope of the Record

As an initial matter, the parties' reliance on four items throughout their briefing warrants the Court's attention. First, James attached a copy of Judge Wagner's state court opinion as an Exhibit to his Complaint. (*See* ECF No. 1-1). Second, Officer Garlock attached a copy of the Affidavit of Probable Cause as an Exhibit to his Motion to Dismiss. (*See* ECF No.

---

[6] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach. *See id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

15-1). Third, Officer Garlock also attached a copy of the transcript from the Omnibus Pretrial Hearing to his Motion. (*See* ECF No. 15-2). And fourth, Officer Garlock attached a copy of the surveillance video depicting the subject incident to his response to James's reply. (*See* ECF No. 25-1).

When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Put differently, the Court "may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, such as a document that is integral to or explicitly relied upon in the complaint." *Jones v. Middletown Twp.*, 253 F. App'x 184, 187 (3d Cir. 2007).

Such materials also include "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). These materials may be considered because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon [those] documents in framing the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2004) (internal quotation marks and citation omitted). Where these requirements are not satisfied, the Court may not consider "extraneous evidence submitted" by the parties when ruling on a motion to dismiss. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

The Court must now determine whether consideration of these four items is proper at this stage of the proceeding. The Court addresses each item in turn.

### A. Judge Wagner's Opinion

As previously noted, James attached a copy of Judge Wagner's opinion dismissing the charges against him as an Exhibit to his Complaint. The Third Circuit has been clear that district courts may consider "exhibits attached to the complaint" when ruling upon a motion to dismiss pursuant to Rule 12(b)(6). *Lum*, 361 F.3d at 222 n.3. And Federal Rule of Civil Procedure 10 provides that "an exhibit to a pleading is part of the pleading for all purposes." FED. R. CIV. P. 10(c).

Moreover, Judge Wagner's opinion is not only attached as an Exhibit to James's Complaint, it is likewise "integral to [and] explicitly relied upon in" his Complaint. *Jones*, 253 F. App'x at 187; (*See* ECF No. 1 ¶¶ 36–46). Accordingly, it is proper for the Court to consider Judge Wagner's opinion in deciding Officer Garlock's Motion to Dismiss.[7]

### B. The Affidavit of Probable Cause

Turning to the Affidavit of Probable Cause, Officer Garlock attached a copy of the Affidavit to his Motion to Dismiss. (ECF No. 15-1). Again, the Court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

---

[7] The Court explains further below how it interprets Judge Wagner's opinion in conjunction with James's Complaint. *See infra* Section V.A.3.ii at 23 n.13.

Here, neither party disputes the authenticity of the Affidavit attached to Officer Garlock's Motion. And there can be no doubt that James's "claims are based on" the Affidavit. *Id.* Indeed, as the Court explains further below, all of James's claims stem from his allegation that Officer Garlock provided false information to the affiant of the Affidavit of Probable Cause. (*See, e.g.*, ECF No. 1 ¶¶ 48, 62, 79, 86).

Accordingly, because (1) the authenticity of the Affidavit is not disputed, (2) Officer Garlock attached a copy of the Affidavit to his Motion, and (3) James's claims are heavily based on the Affidavit, the Court properly considers the Affidavit at this stage. *See Shelley v. Wilson*, 339 F. App'x 136, 137 n.2 (3d Cir. 2009) (explaining that the district court properly considered an affidavit of probable cause attached to the defendant's motion to dismiss where the affidavit was "referenced in [the plaintiff's] complaint" and "integral" to the plaintiff's claim).

### C. Omnibus Pretrial Hearing Transcript

Officer Garlock also attaches a copy of the transcript of the Omnibus Pretrial Hearing held before Judge Wagner to his Motion to Dismiss. Because James's Complaint details the testimony offered at the Omnibus Pretrial Hearing, it is plausible that the transcript qualifies as "a document that is integral to or explicitly relied upon in the complaint." *Jones*, 253 F. App'x at 187.

As a practical matter, however, the transcript bears no relevance to the Court's task at hand. Only Officer Garlock has moved to dismiss. In his Complaint, James does not allege that Officer Garlock testified at or was involved in the Omnibus Pretrial Hearing. To the

contrary, James states that "Defendant Brant was the sole witness that testified on behalf of the Commonwealth" at the hearing. (ECF No. 1 ¶ 29).

It appears that Officer Garlock's intention in attaching the transcript to his Motion was only to conclusively prove this point. (*See* ECF No. 15 at 11, 15) (arguing that the "Transcript establishes that Officer Garlock did not appear for or participate" in the hearing); (arguing the transcript "further establishes that . . . Officer Garlock also did not appear at James'[s] hearing"). But, again, James readily admits that fact in his Complaint. (*See* ECF No. 1 ¶ 29) Because Officer Garlock was not involved in the Omnibus Pretrial Hearing, the transcript of that hearing is of no import in assessing the sufficiency of James's claims against him.[8]

Moreover, the Third Circuit has cautioned that "a court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment." *Lum*, 361 F.3d at 221 n.3 (citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999)).[9] Because the only fact contained in the transcript relevant to the disposition of Officer Garlock's Motion—that he did not testify—is admitted by James in his Complaint, the Court does not consider the Omnibus Pretrial Transcript in analyzing Officer Garlock's Motion.

### D. The Surveillance Video

---

[8] Of course, the transcript would be squarely relevant were the Court addressing a motion to dismiss on behalf of Sergeant Brant. But James's Complaint makes clear that any alleged impropriety on behalf of Officer Garlock finds its basis in his relaying of information to the affiant of the Affidavit of Probable Cause, not the Omnibus Pretrial Hearing.

[9] The Court notes that, at first blush, there appears to be an inherent tension between its consideration of Judge Wagner's opinion and this line of precedent. For a more thorough discussion of the Court's justification for considering Judge Wagner's opinion in light of this precedent, see *infra* Section V.A.3.ii at 23 n.13.

Finally, the Court turns its attention to the surveillance video depicting the encounter between James and Defendant Officers at the Dairy Queen, which Officer Garlock attached to his response to James's reply brief. (*See* ECF No. 25-1). In James's reply brief, he requests that the Court "take judicial notice" of the "video footage[.]" (ECF No. 22 at 2 n.2). But because James never provided the Court with a copy of that video, Officer Garlock attached to his response "an undisputed and authentic copy of the video *which he obtained from Plaintiff.*" (ECF No. 25 at 3) (emphasis added). Accordingly, no party disputes the authenticity of the surveillance video.

Moreover, the surveillance video is both "integral to [and] explicitly relied upon in [James's] complaint." *Jones*, 253 F. App'x at 187. For example, James alleges in his Complaint that he cannot be "seen on video raising his walking cane[.]" (ECF No. 1 ¶ 37). And, like the Affidavit of Probable Cause, James's Complaint relies on the video to show that Officer Garlock provided allegedly false information to the affiant, which forms the basis of his claims. Therefore, the Court can properly consider the surveillance video in deciding Officer Garlock's Motion to Dismiss. *See Wade v. Colaner*, No. 3:06-cv-3715, 2009 WL 1738490, at *4 n.1 (D. N.J. June 17, 2009) (explaining that it was proper to consider a "videotape of the alleged incident" in deciding the defendant's motion to dismiss because the plaintiff "relied on the existence of a videotape in his Complaint").

## V.   Discussion

### A.  James's Fourth Amendment Malicious Prosecution Claim Pursuant to § 1983 at Count I

James brings his § 1983 malicious prosecution claim against Officer Garlock under the Fourth Amendment. (ECF No. 1 at 8). To state such a claim, James must establish:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the

plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

Here, Officer Garlock primarily argues that James has alleged insufficient facts to support the first element—that Officer Garlock initiated criminal proceedings against James. (ECF No. 15 at 11–15). But, in any event, to withstand Officer Garlock's motion to dismiss, James "must sufficiently allege all five elements of his malicious prosecution claim." *Bartow v. Thomas*, No. 3:13-cv-271, 2014 WL 2993786, at *8 (W.D. Pa. July 2, 2014). The Court therefore addresses each element in turn.

**1.  Officer Garlock Initiated Criminal Proceedings Against James**

James alleges that because Officer Garlock "knowingly provided false information for the Affidavit of Probable Cause[,]" he "can be considered as initiating the subsequent criminal proceedings against" James. (ECF No. 1 ¶ 48). Officer Garlock counters that "mere involvement of a responding and/or assisting police officer in the arrest of an individual who is later subjected to criminal proceedings generally does not satisfy the 'initiation' prong under relevant federal law." (ECF No. 15 at 12–13). To that end, Officer Garlock focuses on the fact that he did not sign the Affidavit of Probable Cause or appear and provide testimony at James's pretrial hearing.[10] (*Id.* at 14).

The Third Circuit has recognized that an Officer's "submi[ssion of] an affidavit of probable cause . . . initiate[s] criminal proceedings against" the criminal defendant for the

---

[10] The Court notes that James admits that Sergeant "Brant was the sole witness that testified on behalf of the Commonwealth" at the hearing, and James does not allege that Officer Garlock signed or submitted the Affidavit of Probable Cause. (ECF No. 1 ¶¶ 29, 59).

purposes of a § 1983 malicious prosecution claim. *Jerri v. Harran*, 625 F. App'x 574, 582 (3d Cir. 2015); *see also Bircher v. Pierce*, 610 F. App'x 194, 197 (3d Cir. 2015). But because Officer Garlock did not "submit" the Affidavit of Probable Cause in this case, this principle does not end the Court's inquiry. (ECF No. 15-1).

By Officer Garlock's telling, in order to show he initiated criminal proceedings, James "must establish that Officer Garlock was not merely an assisting officer, but the officer who completed paperwork such as the Criminal Complaint or Affidavit of Probable Cause, and/or that he participated in the subsequent criminal hearings against James." (ECF No. 15 at 13). In assessing Officer Garlock's argument on this score, the Court finds the Third Circuit's opinion in *Halsey v. Pfeiffer* particularly instructive. 750 F.3d 273 (3d Cir. 2014).

In *Halsey*, two Officers investigating a murder obtained what was later discovered to be a falsified confession from the plaintiff, Halsey. *Id.* at 284. Based in part on this alleged confession, the prosecutor decided to charge Halsey. *Id.* Halsey then sued the investigating Officers, among other defendants, for malicious prosecution pursuant to the Fourth Amendment under § 1983. *Id.* at 286.

At the district court, the investigating Officers argued that Halsey's malicious prosecution claim was meritless because it was the prosecutor, not them, who initiated the criminal proceedings against Halsey. *Halsey v. Pfeiffer*, No. 09-1138, 2013 WL 646200, at *14 (D. N.J. Feb. 21, 2013). Agreeing with the Officers, the district court entered summary judgment in their favor on Halsey's Fourth Amendment malicious prosecution claim, reasoning that the prosecutor "used independent judgment in deciding to prosecute[.]" *Id.* at *15.

But the Third Circuit, in reversing the district court's grant of summary judgment to the defendants, disagreed with this conclusion. *Halsey*, 750 F.3d at 296. The court began by recounting that "[i]t is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions.'" *Id.* at 297 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1291 (10th Cir. 2004)).

The Third Circuit explained that "[i]f the officer influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." *Id.* (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)). The court reasoned that "Halsey's malicious prosecution case against [the Officers] therefore should have survived the causation inquiry" because "a rational jury could decide that [the Officers] tainted the probable cause inquiry" by providing the confession. *Id.* at 299. "[W]hen combined with other information known to" the prosecutor, the court explained, the confession "well might have been enough to lead him to file the criminal complaint." *Id.*

*Halsey*, therefore, undercuts Officer Garlock's assertion that "police officers who do not complete the paperwork associated with criminal proceedings, sign or swear to Affidavits of Probable Cause, or participate in summary criminal proceedings" do not "initiate" criminal proceedings under the malicious prosecution inquiry. (ECF No. 15 at 13). The Third Circuit reasoned that Halsey presented a colorable malicious prosecution claim against the investigating officers—who neither signed affidavits nor participated in subsequent criminal

proceedings against Halsey—because "the contents of Halsey's purported confession encouraged [the prosecutor] to initiate Halsey's prosecution." *Halsey*, 750 F.3d at 299.

Here, Officer Garlock's allegedly false averments are contained directly in the operative document used to initiate the criminal proceedings against James. (ECF No. 15-1). And allegedly providing false information to the affiant of the Affidavit of Probable Cause certainly "influence[s] . . . the decision to institute criminal proceedings" by "taint[ing] the probable cause inquiry[.]" *Halsey*, 750 F.3d at 297, 299. While the *Halsey* court inferred that the information provided by the investigating Officers "might have been enough" to lead the prosecutor to file the criminal complaint, the Court need not make such an inference here. *Id.* at 299. Indeed, James plausibly alleges facts that indicate Officer Garlock provided false information that was included in the Affidavit of Probable Cause attached to the Police Criminal Complaint, which initiated the criminal proceedings against James.

*Pierce v. Gilchrist*, which the Third Circuit cited approvingly in its *Halsey* opinion, also bolsters the conclusion that Officer Garlock can "initiate" criminal proceedings against James even if he did not submit the Affidavit of Probable Cause or participate in the subsequent criminal proceedings. 359 F.3d 1279 (10th Cir. 2004). There, the Tenth Circuit declined to dismiss the plaintiff's § 1983 malicious prosecution claim against the Government's forensic analyst because the plaintiff alleged that the analyst, "with knowing and reckless disregard for the truth, informed the police and prosecutorial authorities" that certain evidence supported the defendant's involvement in a crime even though the evidence tended to exonerate him. *Id.* at 1294–94.

The court explained that "§ 1983, by its terms, applies not only to a person who 'subjects,' but also to any person who '*causes to be subjected* . . . any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Id.* at 1292 (quoting 42 U.S.C. § 1983) (emphasis in original). "This suggests," the court stated, "that Congress was concerned not just with the officer who formally initiates the process that leads to an unconstitutional seizure, but to all those who were the 'cause' of deprivations of constitutional rights." *Id.* Accordingly, the court held that the forensic analyst could not "'hide behind' the fact that she neither initiated nor filed the charges against" the plaintiff, and therefore denied the motion to dismiss the plaintiff's malicious prosecution claim. *Id.* at 1293.

Here, Officer Garlock suggests that because he did not submit or sign the Affidavit of Probable Cause in this case, the "independent decision to seek a warrant breaks the causal chain and insulates" him "from a section 1983 claim based on lack of probable cause for an arrest or prosecution." (ECF No. 15 at 12). But like the forensic analyst in *Pierce*, Officer Garlock cannot hide behind the fact that he did not sign or submit the Affidavit of Probable Cause. James squarely alleges that Officer Garlock "knowingly provided false information" to the affiant.[11] (ECF No. 1 ¶ 48). As the Supreme Court has explained, "police [can]not insulate one officer's deliberate misstatement merely by relating it through an officer-affiant personally ignorant of its falsity." *Franks v. Deleware*, 438 U.S. 154, 164 n.6 (1978).

To be sure, myriad district courts within this circuit have reached similar conclusions when faced with malicious prosecution claims launched against Officers who did not sign or submit an Affidavit of Probable Cause, but provided information contained therein. *See, e.g., Schultz v. Hughesville Borough*, No. 4:10-CV-0262, 2011 WL 3273076, at *57–59 (M.D. Pa. July 29,

---

[11] The Court notes that, as explained below, *see infra* Section V.A.3.ii, the legal conclusion in text above is properly supported by other factual averments James alleges in his Complaint. Accordingly, the Court accepts this allegation as true throughout its analysis.

2011) (holding that "a jury could reasonably conclude that [the defendant] Officer [] initiated the charges" against the plaintiff where, notwithstanding the fact that the Officer did not prepare or file the affidavit of probable cause, the evidence indicated that the Officer "helped procure the filing of the affidavit" in part through "his statements to" the affiant); *Lennon v. Sharon Hill Borough*, No. 12-cv-6701, 2014 WL 1395038, at *12, *16 (E.D. Pa. Apr. 10, 2014) (holding that the plaintiff satisfied the initiation prong of his malicious prosecution claim as against defendant Officers who "provided [the affiant] with allegedly false information that was used in completing the affidavit of probable cause"); *cf. Mason v. Mahon*, No. 05-cv-1639, 2006 WL 781724, at *21 (E.D. Pa. Mar. 23, 2006) (holding that "Plaintiff has not provided any evidence that Defendant [Officer] initiated criminal proceedings against" him because "Defendant [Officer] did not provide any information included in the Affidavit of Probable Cause[,]" which was prepared and signed by other Officers).

Accordingly, the Court finds that because James alleges that Officer Garlock knowingly provided false information to the affiant of the Affidavit of Probable Cause, which formed the basis for James's criminal prosecution, Officer Garlock "initiated" criminal proceedings against James. James has, therefore, satisfied the first element of his malicious prosecution claim.

**2. The Criminal Proceedings Ended in James's Favor**

As to this element, the Supreme Court recently explained that the "favorable termination" requirement means only "that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). Here, James alleges, and the state court opinion reflects, that the charges against James were dismissed. (ECF No. 1 ¶ 45; ECF No. 1-1 at 6).

Because James's criminal prosecution ended without a conviction, he has satisfied the favorable termination element of his malicious prosecution claim. *See, e.g., Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (explaining that the proceedings ended in the plaintiffs favor where one "charge was dismissed after the preliminary hearing, and [the plaintiff] was found not guilty on the remaining charges"); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) ("[T]he criminal proceedings ended in their favor when dismissed[.]").

### 3. Officer Garlock Did Not Initiate the Proceeding Without Probable Cause

As previously noted, the thrust of James's allegations supporting his malicious prosecution claim is that Officer "Garlock knowingly provided false information for the Affidavit of Probable Cause[,]" which was "based on falsehoods and inaccuracies." (ECF No. 1 ¶ 48, 62). "When a plaintiff in a § 1983 [malicious prosecution] action alleges misrepresentation and omissions in the affidavit of probable cause, the plaintiff must satisfy the two part test developed in *Franks v Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)." *Skunda v. Pa. State Police*, 47 F. App'x 69, 70–71 (3d Cir. 2002).[12]

---

[12] At this time, the Court clarifies its employment of this standard in two regards. First, the Court recognizes that *Franks* dealt with a plaintiff challenging the sufficiency of an affidavit of probable cause in obtaining a search warrant. *Franks*, 438 U.S. at 155. In this case, there was no search warrant. Instead, the Affidavit of Probable Cause sought a warrant for James's arrest. (ECF No. 15-1). However, the Third Circuit, in both *Skunda* and *Bircher*, applied the *Franks* standard to the plaintiff's claim that the defendants falsified information in an affidavit for an arrest warrant, not a search warrant. *Skunda*, 47 F. App'x at 70–71; *Bircher*, 610 F. App'x at 197. Thus, the fact that James challenges the accuracy of an affidavit for his arrest warrant, rather than a search warrant, provides no basis to circumvent *Franks*'s application here.

Second, in both *Skunda* and *Bircher*, the defendant was the Officer who submitted the affidavit of probable cause. As previously explained, much of Officer Garlock's argument regarding James's malicious prosecution claim against him revolves around the fact that Officer Garlock did not submit or sign the Affidavit of Probable Cause. However, the Court interprets—and, indeed, Officer Garlock presents—this argument as going towards the "initiation" prong of James's malicious prosecution claim, not the probable cause inquiry. (*See* ECF No. 15 at 12–13). In any event, however, the Court notes that the *Franks* analysis it employs in text comports with the analyses undertaken by the courts in *Pierce* and *Lennon*—both cases in

Under step one, James must show that Officer Garlock "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant." *Franks*, 438 U.S. at 399. And under step two, James must show "that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.; see also Andrews v. Scuilli*, 853 F.3d 690, 697–99 (3d Cir. 2017); *Bircher v. Pierce*, 610 F. App'x 194, 197 (3d Cir. 2015) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *Franks*, 438 U.S. at 155–56) (applying the same analysis).

### i.   Consideration of Exhibits During the Probable Cause Inquiry

At this point, the Court pauses to explain how two items attached to the parties' pleadings as exhibits—the Affidavit of Probable Cause and the surveillance video of the subject incident—factor into the following analysis. The Court previously outlined the rules authorizing the Court to consider both items at the motion to dismiss stage. *See supra* Sections IV.B, IV.D. The purpose these rules serve, the Third Circuit has explained, is to "avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim

---

which the defendant did not submit an affidavit of probable cause, but rather provided false information to the affiant or prosecuting authorities. *Pierce*, 359 F.3d at 1291; *Lennon*, 2014 WL 1395038 at *15 (particular defendants did not sign or submit the affidavit of probable cause, but "provided false statements" in it). The *Pierce* court cited to *Franks* in explaining that "the existence of probable cause" is "determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Pierce*, 359 F.3d at 1293. And the court in *Lennon*, in analyzing the plaintiff's malicious prosecution claim, rested on its "discuss[ion] above" to conclude that the plaintiff introduced sufficient evidence to cast doubt on "whether the account of the incident in the affidavit of probable cause" was "truthful." *Lennon*, 2014 WL 1395038 at *15–16. The "discuss[ion] above" to which the court referred applied *Franks* to determine whether there was a lack of probable cause. *Id.* at *8–12. Therefore, even where, as here, the defendant is not the signatory of any operative paperwork, but nonetheless is alleged to have provided false information in an affidavit of probable cause, the Court remains convinced that the *Franks* standard is the appropriate mechanism through which to analyze whether probable cause supported the initiation of criminal proceedings against James.

by failing to attach the relied upon document." *Lum*, 361 F.3d at 221 n.3 (citing *Pension Ben. Guar. Corp.*, 998 F.2d at 1196).

Put differently, although the Court is generally required to accept the Complaint's factual allegations as true, this requirement does not apply where those allegations are contradicted by the exhibits relied upon by the parties. *See Gupta v. Wipro Ltd.*, 749 F. App'x 94, 97 (3d Cir. 2018) (citing *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)). In this context, the Court understands this principle to mean that James's factual allegations regarding the alleged falsities in the Affidavit of Probable Cause, if clearly contradicted by the Affidavit itself or the surveillance video, cannot form the basis of James's claim.

This approach is particularly relevant to James's assertion that "Defendant Officers provided all of the information for the Affidavit of Probable Cause[,]" especially considering that only Officer Garlock has moved to dismiss. (ECF No. 1 ¶ 56). In analyzing the authentic copy of the Affidavit of Probable Cause attached to Officer Garlock's Motion to Dismiss, the Court notes that the Affidavit appears to speak in three "voices." In some areas, the Affidavit reads as though it is merely recounting facts, ascribing no source to that information. (*See, e.g.*, ECF 15-1) ("Ofc. GARLOCK then attempted to handcuff the defendant as he was lying on his side."). Elsewhere, information provided in the Affidavit is preceded by either "Sgt. BRANT related that . . ." or "Ofc. GARLOCK related that . . . ." (*See id.*).

One could reasonably interpret this language to mean that the only information Officer Garlock "provided" to the affiant are those with this particular precursor. Indeed, Officer Garlock makes this argument in his Motion to Dismiss. (ECF No. 15 at 10). On the other hand, it is plausible that, as James appears to allege, Officer Garlock provided information to the affiant that

served as the basis for a greater portion of the Affidavit than those specific instances that indicate Officer Garlock "related" the subsequent facts. After all, Officer Garlock was present at the scene of the events that form the basis of the Affidavit, and there is no indication in the record before the Court that the affiant, Trooper Churney, was even remotely involved in the subject incident.[13]

However, neither conclusion just offered is made abundantly clear on the Affidavit's face. In other words, reaching either conclusion would require an inference on the Court's part. At the motion to dismiss stage, the Court is required to "draw[] every reasonable inference in favor of the nonmoving party[.]" *Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 290 n.7 (3d Cir. 2019) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 & n.2 (3d Cir. 2016)). Accordingly, due to this case's procedural posture, the Court infers that Officer Garlock's contributions to the facts outlined in the Affidavit span further than those portions of the Affidavit preceded by "Ofc. GARLOCK related . . . ."

But this inference only goes so far. While an inference is required to determine whether the portions of the Affidavit that do not begin with "Ofc. GARLOCK related" were informed by Officer Garlock, the same cannot be said for the portions that begin with "Sgt. BRANT related . . . ." Instead, it is clear from the face of the Affidavit that those statements are attributable to Sergeant Brant, not Officer Garlock. And this reading of the Affidavit accords with James's allegation that "Defendant *Officers* provided all of the information for the Affidavit of Probable Cause[.]" (ECF No. 1 ¶ 56) (emphasis added). James does not allege that Officer Garlock alone

---

[13] The Court notes that the first paragraph of the Affidavit states that the "Redstone Township Police Department was called to assist until *we* could get on scene." (ECF No. 15-1) (emphasis added). However, the Court stresses that there is no indication in the rest of the Affidavit, or in the party's pleadings, that the affiant—Trooper Churney—was present at the Dairy Queen on January 14, 2018, when any of the relevant events occurred.

provided all the information, but that he and Sergeant Brant did. Accordingly, when analyzing the Affidavit at this stage of the proceeding, the Court will infer that the information contained therein that is not specifically attributed to Sergeant Brant was provided to the affiant by Officer Garlock.

Moreover, just as the Affidavit of Probable Cause acts as a check on whether the Court takes James's factual allegations as true, so too does the surveillance video of the incident. As the Court will explain further below, some of James's factual allegations cannot be conclusively proven or disproven by viewing the video. In such a circumstance, the Court remains obligated to take James's factual allegations as true. However, where the surveillance video clearly contradicts a factual allegation contained in James's Complaint, the Court is not required to treat such an allegation as presumptively true.

With this in mind, the Court turns to the portions of the Affidavit of Probable Cause that James alleges are false.

### ii.  Allegedly False Statements

In his Complaint, James makes no allegation that Officer Garlock recklessly omitted material information when relaying facts to the affiant of the Affidavit of Probable Cause. Instead, James only alleges that the information Officer Garlock to the affiant was false. (ECF No. 1 ¶ 48, 42).[14]

---

[14] The Court pauses to clarify its reading and analysis of James's Complaint. As previously mentioned, James attached the state court opinion dismissing his charges to his Complaint as an exhibit. (*See* ECF No. 1 ¶ 46) ("Judge Wagner's Opinion is attached as Exhibit A."). Pursuant to Federal Rule of Civil Procedure 10(c), because the opinion "is an exhibit to a pleading[,]" it is "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). And the Court is further entitled to consider the attached opinion at the motion to dismiss stage for the reasons outlined above. *See supra* Section IV.A.

In assessing what James alleges Officer Garlock to have misrepresented or falsified in the Affidavit of Probable Cause, the Court therefore looks to both the factual allegations contained in the body of James's Complaint, as well as the factual allegations in the state court opinion James incorporates by reference. After all, the proper inquiry at the 12(b)(6) stage is "whether, under *any reasonable reading of the complaint*, the plaintiff may be entitled to relief." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (emphasis added). It is certainly reasonable to read James's Complaint as attaching the state court opinion to reflect what he alleges are the factual inaccuracies contained in the Affidavit of Probable Cause. To be sure, in James's reply to Officer Garlock's Motion to Dismiss, he argues that "these findings"—referencing those of the state court opinion—"directly contradict" statements made in the Affidavit of Probable Cause. (ECF No. 22 at 4). A reasonable reading of James's Complaint therefore shows that he adopts the *factual* findings of the state court opinion as his own factual allegations as to what transpired during the subject incident. Put differently, one can reasonably read James's Complaint as alleging that the discrepancies between the facts in the Affidavit of Probable Cause and those contained in the state court opinion form the basis of his allegation that Officer Garlock "knowingly provided false information for the Affidavit of Probable Cause." (ECF No. 1 ¶ 48).

The Court is aware that, at first blush, this approach appears to run afoul of the Third Circuit's instruction that "[w]hile a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999)). But, for three reasons, the Court is convinced that considering the state court opinion in the way just described does not defy this precedent. First, *Lum* used this language to explain why the district court below "improperly took judicial notice of [the plaintiff's] deposition testimony in a prior proceeding that he" understood particular term of an agreement. *Id.* At the district court, there was no indication that the plaintiff attached the deposition to his complaint, and the deposition was not integral to the plaintiff's complaint or relied upon therein. *Lum v. Bank of Am.*, No. 00-223, 2001 WL 34059378, at *14–15 (D. N.J. Nov. 29, 2001). Instead, the district court—seemingly on its own initiative—took judicial notice of the plaintiff's deposition testimony from ten years earlier to refute a factual allegation in the plaintiff's complaint. *Id.* This is a far cry from the approach the Court takes in this case. Here, the Court is only incorporating the factual averments of the state court opinion—which James attached as an exhibit to his Complaint—to bolster the factual allegations in James's Complaint, not refute them. And, in doing so, the Court is not introducing a document, like the deposition in *Lum*, that neither party intended or even (seemingly) contemplated would be considered by the Court at the 12(b)(6) stage. Second, as opposed to the deposition in *Lum*, the state court opinion is not a "public record" of which the Court is taking judicial notice. Instead, it is both an "exhibit[] attached to the complaint" and a document that is "integral to or explicitly relied upon in the complaint." *In re Burlington*, 114 F.3d at 1426. The Third Circuit has been abundantly clear that a court is entitled to consider such documents at the motion to dismiss stage. *See id.*; *Lum*, 361 F.3d at 221 n.3. And no precedent suggests that the restrictions of judicially noticing a document espoused in *Lum* similarly apply to those documents that are attached to the complaint or integral to the plaintiff's claims. Third, and finally, Officer Garlock makes no argument, nor points to any principal of law, suggesting that it would be improper for the Court to consider the state court opinion in the way previously described. Rather, Officer Garlock appears to acquiesce to the Court's consideration of the state court opinion by launching arguments tethered to the opinion itself. (*See, e.g.*, ECF No. 15 at 11) ("Judge Wagner did not hold or opine that the above-referenced information which Officer Garlock allegedly provided to Trooper Churney was false or erroneous.").

In reading James's Complaint, he alleges several specific falsehoods are contained in the Affidavit of Probable Cause. The Court addresses each in turn to determine whether Officer Garlock would have had "obvious reasons to doubt the truth of what he" was asserting at the time he relayed the information to the affiant. *Wilson*, 212 F.3d at 783. Additionally, the Court considers whether any falsehoods allegedly contributable to Officer Garlock are refuted by the Affidavit or the surveillance video.

First, James alleges that he was not "raising his walking cane, shaking it at the officers or holding it in a threatening manner as was claimed in the Affidavit of Probable Cause[.]" (ECF No. 1 ¶ 37). On this point, the Affidavit reads: "The defendant had his wooden cane up in the air" while in front of the doorway. (ECF No. 15-1). A review of the surveillance video proves this true, and therefore undercuts James's allegation to the contrary. James can clearly be seen approaching the door after the Officers arrived while holding his cane well off the ground. (*See* ECF No. 25-1

---

Moreover, in undertaking this analysis, the Court stresses that it only considers those portions of the state court opinion that James could reasonably be understood as adopting as a factual allegation. The Court does not consider any quasi-legal conclusions contained in the state court opinion, such as the finding that "[t]he encounter between the officers and the Defendant was escalated by the police without cause." (ECF No. 1-1 at 5). Instead, the Court only considers purely factual assertions, such as "the Defendant back[ed] up to the chair that he had been sitting in previously." (*Id.*). Further, the Court is also mindful of the fact that, in undertaking its probable cause inquiry, it may "look only to the information available to [Officer Garlock] at the time of the swearing of the affidavit of probable cause." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 (3d Cir. 2016). To that end, the Court will not consider portions of the state court opinion that bear a resemblance to the following passage: "No evidence was presented that the Officers informed the Defendant that he was under arrest[.]" (*Id.*). The fact that a particular piece of evidence was not disclosed by Officer Brant at the preliminary hearing that occurred well after the subject incident bears no relation to what Officer Garlock knew at the time he relayed information to the affiant. The only information Officer Garlock could allegedly falsify in the Affidavit of Probable Cause is what transpired in the Dairy Queen on January 14, 2018. For this reason, the Court only considers those portions of the state court opinion that contain facts—which James's incorporates and alleges by reference—that relate to what occurred during the subject incident.

at 5:14:07–5:14:10). Accordingly, James's allegation that this portion of the Affidavit is false is entitled to no deference.[15]

Second, James alleges that he "was sitting down" when Sergeant Brant entered the Dairy Queen and tased him. (ECF No. 1 ¶ 38).[16] The Affidavit, for its part, reads as though James was standing up when the Officers entered the Diary Queen and Sergeant Brant deployed his taser. (*See* ECF No. 15-1) (stating that James "stood up from his seated position and began yelling" and that after Sergeant Brant tased James he "staggered and fell down on his side"). Again, the surveillance video proves this to be true. The video clearly depicts that James was standing upright when the Officers entered and when Sergeant Brant tased him. (*See* ECF No. 25-1 at 5:14:47). Accordingly, the Court cannot take James's allegation that the Affidavit falsely indicates that he was standing as true.

Third, James alleges that he did not "go[] for" or grab at "Defendant Garlock's gun belt." (ECF No. 1 ¶ 26; ECF No. 22 at 3). And, relatedly, James alleges that the Affidavit falsely states that Officer Garlock struck James with his baton because James kept going for Officer Garlock's

---

[15] What James's allegation on this point may ultimately be getting at is the portion of the Affidavit that reads: "Sgt. BRANT related that the defendant then put his cane to his side, so he thought that he was going to calm down. Sgt. BRANT related that the defendant then began *waiving* his cane around again." (ECF No. 15-1) (emphasis added). As the Court explained above, the Affidavit clearly evidences that this statement is attributable to Sergeant Brant, not Officer Garlock. Accordingly, because this alleged falsehood is not attributable to Officer Garlock—and he is the only Defendant moving to dismiss James's malicious prosecution claim—this portion of the Affidavit bears no relation to the Court's analysis.

[16] The Court notes that elsewhere in his Complaint James alleges he "was attempting to sit down" when Sergeant Brant tased him. (ECF No. 1 ¶ 44). But the Affidavit makes no assertion that James was moving towards Defendant Officers or any similar factual allegation that contradicts James's contention that he was attempting to sit down. Again, James does not allege in his Complaint that Officer Garlock omitted material information from the Affidavit; he only alleges that Officer Garlock "knowingly provided false information[.]" (*Id.* ¶ 48). Because only James's allegation that he was sitting when Sergeant Brant entered the Dairy Queen is contradicted by the Affidavit's indication that James was standing at that time, the Court solely addresses that allegation.

gun belt. (*Id.*). The Affidavit states that James "was grabbing Ofc. GARLOCK's gunbelt" and "Ofc. GARLOCK further related that when the defendant kept going for his belt, he grabbed his baton and struck the defendant a few times with it on his side." (ECF No. 15-1). A review of the video, however, refutes James's allegation that these portions of the Affidavit are false. During the initial struggle, James can clearly be seen grabbing at Officer Garlock's belt. (ECF No. 25-1 at 5:15:02–5:15:04). And later, the video shows James grabbing at Officer Garlock's belt again. (*Id.* at 5:17:12–5:17:14; 5:17:15–5:17:16). The video then portrays Officer Garlock pushing James's hand away from his waist before striking him with his baton. (*Id.* at 5:17:18–5:17:22). Accordingly, James's allegation that he was not grabbing at Officer Garlock's belt cannot be taken as true in light of the contrary video evidence.

Fourth, James alleges that he did not strike Officer Garlock with his walking cane. (ECF No. 1-1 at 5; ECF No. 1 ¶ 24; ECF No. 22 at 3). The Affidavit states that James "took his cane and swung it at Ofc. GARLOCK, striking the area of his right ribs" before Officer Garlock deployed his pepper spray. (ECF No. 15-1). Again, the video proves this allegation true. When James initially falls to the ground, his walking cane remains in his right hand. (*See* ECF No. 25-1 at 5:14:47–5:14:51). The video shows that while James is on the ground, when Officer Garlock approaches, James swings his cane in his right hand at Officer Garlock, striking him in the abdomen area. (*Id.* at 5:14:51–5:14:53). Therefore, the surveillance video refutes James's allegation that he did not strike Officer Garlock with his walking cane.

Fifth, and finally, James alleges that he did not kick Officer Garlock as the Affidavit claims. (ECF No. 1-1 at 5; ECF No. 1 ¶ 23). The Affidavit states that James "began resisting arrest and started grabbing at Ofc. Garlock and kicking him." (ECF No. 15-1). Here, the video does not

provide a clear answer. James can be seen struggling with Officer Garlock on the ground, and his legs are certainly moving during this struggle. (*See* ECF No. 22-1 at 5:15:05–5:15:19). But nowhere in the video can James clearly be seen kicking Officer Garlock. Therefore, because the video does not refute James's allegation, the Court will take as true James's assertion that he did not kick Officer Garlock.

In sum, the only falsehood remaining that is not contradicted by the surveillance video is James's assertion that he did not kick Officer Garlock. Before proceeding to *Franks*'s second step, the Court must determine whether Officer Garlock relayed this falsehood to the affiant "knowingly and deliberately, or with a reckless disregard for the truth[.]" *Franks*, 438 U.S. at 399.

As the Third Circuit has explained, "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000). And, in analyzing James's assertion that Officer Garlock provided false information to the affiant, the Court "look[s] only to the information available to [Officer Garlock] at the time of the swearing of the affidavit of probable cause." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 (3d Cir. 2016).

Here, the Court must take as true James's allegations that he did not kick Officer Garlock. It follows, then, that when Officer Garlock allegedly told the affiant that James kicked him, he had "obvious reasons to doubt the truth of what he" was asserting. *Wilson*, 212 F.3d at 783. And because any kick inflicted on Officer Garlock would have occurred during the subject incident, he would have known the falsity of his statement at the time he relayed it to the affiant later that same day. (ECF No. 15-1). Therefore, James has sufficiently pled that Officer Garlock "knowingly

and deliberately, or with a reckless disregard for the truth, made [a] false statement[]" to the affiant, and *Franks*'s first step is satisfied.

### iii. Reconstructed Affidavit

Because the Court has determined that the Affidavit of Probable Cause contains a "reckless misrepresentation[,]" the Court must now "'excise the offending inaccurac[y]' . . . from the affidavit and assess whether the reconstructed affidavit would establish probable cause." *Dempsey*, 834 F.3d at 470 (citing *Wilson*, 212 F.3d at 789). The Third Circuit has "clarif[ied] that when a court determines that information was asserted . . . in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit." *Id.* Therefore, here, the Court removes the falsehood James adequately alleges the Affidavit contains—that he kicked Officer Garlock—and reconstructs the Affidavit accordingly. The Affidavit reconstructed to omit these alleged falsehoods would read:

> On 1/14/18 at approximately 1706 hours, PSP Belle Vernon was forwarded a call from Fayette County 911 from the Manager at the Dairy Queen, 540 National Pike East, Brownsville, PA 15417, Redstone Township, Fayette County. The Manager had reported that there was a male (defendant) in the restaurant acting strange. PSP Belle Vernon didn't have any cars in the area; therefore, Redstone Township Police Department was called to assist until we could get on scene. On 1/14/1[8] at approximately 1715 hours, John Martin BRANT (victim), who is a Sergeant with the Redstone Township Police Department and Gregory Allan GARLOCK (victim), who is an Officer with the Luzerne Township Police Department arrived on scene together.
>
> As Sgt. BRANT and Ofc. GARLOCK got out of their patrol vehicles, Sgt. BRANT recognized the male, who he was able to identify as Harry JAMES (defendant) from having recent dealings with him. Sgt. BRANT saw the male seated near a window seat. As soon as the defendant saw the Officers, he stood up from a seated position and began yelling at the Officers and throwing his hands up in the air at them from inside of the window. As Sgt. BRANT and Ofc. GARLOCK approached the door to enter the restaurant, the defendant walked towards the door and stood in front of the doorway. The defendant had his wooden cane up in the air and was yelling at the Officers, "This is

a spiritual war, I am going to kill you guys!" Sgt. BRANT then started calling the defendant by his name, by saying, "Harry, put the cane down." Sgt. BRANT related that he probably told the defendant to put his cane down approximately eight times. Sgt. BRANT related that the defendant then put his cane to his side, so he thought that he was going to calm down. Sgt. BRANT related that the defendant then began waiving his cane around again. Sgt. BRANT related that he then opened the double door and tazed the defendant because he was not complying with his verbal commands. Sgt. BRANT related that one tazer probe struck the defendant in his navel area and one struck him in his stomach. Sgt. BRANT related that the defendant then staggered and fell down on his side.

Ofc. GARLOCK then attempted to handcuff the defendant as he was lying on his side. The defendant then began resisting arrest and started grabbing at Ofc. GARLOCK ~~and kicking him.~~ The defendant was grabbing Ofc. GARLOCK's gunbelt and was swinging at him. Sgt. BRANT attempted to taze the defendant again, but it had no [e]ffect. The defendant then took his cane and swung it at Ofc. GARLOCK, striking the area of his right ribs. Ofc. GARLOCK then pepper sprayed the defendant in the area of his eyes, which had no [e]ffect on the defendant. The defendant continued yelling and grabbing at the officer's, saying things like, "This is a war!" Ofc. GARLOCK related that his glasses fell off during the scuffle and he skinned his left pinky knuckle, causing it to bleed. Ofc. GARLOCK further related that when the defendant kept going for his belt, he grabbed his baton and struck the defendant a few times with it on his side, which was not [e]ffective. Ofc. GARLOCK related that he was finally able to get one cuff around the defendant's wrist and used the other handcuff to hold the defendant down until Officer RUSSEL with the California Borough Police Department arrived on scene and assisted in getting the defendant handcuffed.

I, Your affiant, respectfully request that a warrant be issued for the defendant, who is currently in Uniontown Hospital.

### iv. Materiality

The Court must now evaluate "whether the reconstructed affidavit would establish probable cause." *Id.* "If it would, [James's] claim fails because 'even if there had not been omissions' . . . in the affidavit presented to the magistrate judge, there would have been probable cause for the charges against [James]." *Id.*

"Probable cause for purposes of malicious prosecution actions has been defined as: 'reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense.'" *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir. 1973). Notably, "[f]or malicious prosecution, probable cause on one charge 'does not foreclose a malicious prosecution cause of action' as to a separate charge which lacks probable cause." *Harvard*, 973 F.3d at 199 n.3 (quoting *Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2020)); *see also Alburg v. Jones*, No. 21-2580, 2023 WL 2823895, at *6–7 (3d Cir. Apr. 7, 2023) (reversing the district court's dismissal of the plaintiff's malicious prosecution claim for failure to heed *Johnson*'s instruction that probable cause must support all charges brought against the plaintiff). [17] Put differently, if probable cause is lacking with respect to at least one of the charges brought against James, even if probable cause supports the remaining charges, James may satisfy the lack-of-probable-cause element of his malicious prosecution claim.

Here, however, the Court is satisfied that the reconstructed Affidavit provides sufficient probable cause supporting each of the six offenses with which James was charged. Although, generally, "the question of probable cause in a section 1983 damages suit is one for the jury," *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998), a "district court may conclude in the

---

[17] The Court notes that other Third Circuit precedent suggests that a finding that probable cause supported one charge against James may be sufficient to end the Court's analysis, since all of James's charges arose from a singular incident. *See Simonson v. Borough of Taylor*, 839 F. App'x 735, 740 n.7 (3d Cir. 2020) ("Because all of Simonson's crimes were simultaneously charged and arose from the same incident, we need not individually analyze the probable cause for the remaining offenses.") (citing *Wright*, 409 F.3d at 604; *Johnson*, 477 F.3d at 84). But even the *Simonson* court found it worthwhile to briefly explain why, "[i]n any event, there is probable cause for all the charges." *Id.* Therefore, out of an abundance of caution, and in accordance with the Third Circuit's precedential opinion in *Johnson*, the Court evaluates whether the reconstructed Affidavit supports a finding that probable cause supported charging James with all six offenses.

appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding[.]" *Sherwood*, 113 F.3d at 401.

As the Third Circuit explained in a similar case, "[b]ecause probable cause exists where there is merely a 'fair probability' that the arrestee committed a crime, we need not identify 'the same type of specific evidence of each element of [an] offense as would be needed to support a conviction.'" *Dempsey*, 834 F.3d at 447. Here, the Court finds that the allegations contained in the reconstructed Affidavit are sufficient to conclude there was a "fair probability" James committed the crimes with which he was charged.

### a.   Aggravated Assault

Beginning with the most serious offense with which James was charged—Aggravated Assault[18] pursuant to PA. CONS. STAT. § 2702(a)(3)—that provision states: "A person is guilty of aggravated assault if he: . . . attempts to cause or intentionally causes bodily injury to any of the officers, agents, employees, or other persons enumerated in subsection (c), in the performance of duty[.]" 18 PA. CONS. STAT. § 2702(a)(3).

The Court notes that the reconstructed Affidavit still provides that Officer Garlock suffered a skinned pinky knuckle and sustained a blow to his ribs from James's walking cane. But this does not conclusively establish that James "cause[d] bodily injury to" Officer Garlock within the meaning of the Aggravated Assault statute. Pennsylvania's Consolidated Statutes define

---

[18] Indeed, as James points out, Aggravated Assault was the only felony with which he was charged. The remaining offenses are either misdemeanors or summary offenses.

"bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 PA. CONS. STAT. § 2301.

A skinned finger does not fall neatly within this definition, and without more information in the reconstructed Affidavit regarding the physical effects Office Garlock experienced as a result of being struck with James's walking cane, the Court cannot conclude that the reconstructed Affidavit establishes that James "intentionally or knowingly cause[d] bodily injury" to Officer Garlock.[19] *See, e.g., Commonwealth v. Wertlet*, 696 A.2d 206, 210–13 (Pa. Super. Ct. 1997) (explaining that "the connotation of bodily injury" suggests "a physical event unlike those commonly occurring in normal life which, although unpleasant and somewhat painful, do not seriously interrupt one's daily life" and concluding that an arrestee kicking an Officer was insufficient to show the Officer experienced "bodily injury" because the pain and discomfort it inflicted were inadequate).

But the Aggravated Assault statute also contemplates guilt where a person "attempts to cause . . . bodily injury[.]" 18 PA. CONS. STAT. § 2702(a)(3). In reviewing the reconstructed Affidavit, the Court notes that the following facts therein tend to support a finding that there was a "reasonable ground of suspicion[,]" *Thomas*, 476 F.2d at 471, that James attempted to inflict bodily injury upon the Officers: (1) James grabbed at the Officers repeatedly, (2) James grabbed at Officer Garlock's gun belt repeatedly, (3) James struck Officer Garlock with his cane, and (4) James was swinging at Officer Garlock.

---

[19] The Court notes that an argument could be made that the reconstructed Affidavit's allegation that James struck Officer Garlock with his cane supports a "fair probability" that bodily injury was inflicted. But the Court need not reach that conclusion here. As will be explained in text, the allegations contained in the reconstructed Affidavit clearly support probable cause with respect to the "attempt" portion of the Aggravated Assault statute.

Of course, the other fact that would support probable cause—that James kicked Officer Garlock—is omitted from the reconstructed Affidavit. Moreover, the reconstructed Affidavit also provides that James yelled, "This is a spiritual war, I am going to kill you guys[,]" to the Officers and continued yelling things like "This is war!" throughout the encounter. (ECF No. 15-1).

Notably, Pennsylvania case law makes clear that intent to cause bodily injury can also be supported through circumstantial evidence and "inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa. Super. Ct. 2006). And to be sure, this conduct can also include words. *See, e.g., Commonwealth v. Alford*, 880 A.2d 666, 672 (Pa. Super. Ct. 2005) (reasoning that there was "nothing in appellant's *words* or conduct from which the jury could infer" intent to cause bodily injury) (emphasis added).

Here, the fact that the reconstructed Affidavit provides that James grabbed Officer Garlock's gun belt, swung at him, and—most importantly—struck Officer Garlock with his walking cane, strongly supports a reasonable ground of suspicion that James committed Aggravated Assault. *See, e.g., Commonwealth v. Soto*, 202 A.3d 80, 92 (Pa. Super. Ct. 2018) (finding that probable cause supported an Aggravated Assault charge where the defendant "pushed [an] officer[,]" "engaged in an altercation with the officer[,]" and "attempted to punch the officer"); *Commonwealth v. Brown*, No. 1735 EDA 2014, 2015 WL 6554394, at *8 (Pa. Super. Ct. 2015) (finding that probable cause supported an Aggravated Assault charge because the fact that the defendant "struck [an officer] in the foot" with his bicycle indicated that the defendant "attempted to cause [the officer] physical impairment or substantial pain"); *Campbell v. Balon*, No. 4:16-CV-00779, 2019 WL 480472, at *4 (M.D. Pa. Feb. 7, 2019) (finding that probable cause supported an Aggravated

Assault charge because there was a "fair probability" that the charged individual "struck" someone with a glass).

But when James's actions are viewed in the context of his threat that he would kill the Officers and that "[t]his is war[,]" it becomes clear that the facts contained in the reconstructed Affidavit support the conclusion that there was at least a fair probability that James was attempting to inflict bodily injury upon the Officers. And even when "viewed most favorably" to James, the Court concludes that the reconstructed Affidavit "reasonably would not support a contrary factual finding." *Sherwood*, 113 F.3d at 401. Accordingly, the Court finds that the reconstructed Affidavit provides probable cause for charging James with Aggravated Assault.

### b. Simple Assault

In addition to Aggravated Assault, James was charged with two counts of Simple Assault. (ECF No. 1-1 at 2). Under Pennsylvania law, a person is guilty of Simple Assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 PA. CONS. STAT. § 2701(a)(1). Pennsylvania courts have explained that the "only differences" between Simple Assault under § 2701(a)(1) and Aggravated Assault pursuant to § 2702(a)(3) is "that the latter applies when the assault is committed upon one of the persons enumerated in § 2702(c) in the performance of their duties and the latter does not allow for a *mens rea* of recklessness." *Commonwealth v. Marti*, 779 A.2d 1177, 1182–83 (Pa. Super. Ct. 2001).

In other words, Aggravated Assault under § 2702(a)(3) is essentially a Simple Assault under § 2701(a)(1) committed against an Officer. *See id.* ("Calling simple assault upon a police officer aggravated merely reflects the legislature's intent to punish this assault more severely than one committed upon a layperson[.]"). The Court already found above that the reconstructed

Affidavit provides sufficient facts to provide probable cause to believe James attempted to inflict bodily injury upon the Officers under the Aggravated Assault statute. It follows, then, that those same facts indicate a reasonable probability that James attempted to inflict bodily injury upon the Officers under the Simple Assault statute.

### c.  Terroristic Threats

James was also charged with two counts of Terroristic Threats under PA. CONS. STAT. § 2708(a)(1). (ECF No. 1-1 at 2). That provision states: "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 PA. CONS. STAT. § 2708(a)(1).

Here, James does not dispute the reconstructed Affidavit's allegation that he yelled at the Officers: "This is a spiritual war, I am going to kill you guys!" (ECF No. 15-1). This fact alone is sufficient to provide probable cause for charging James with Terroristic Threats. *See, e.g., Fiore v. City of Bethlehem*, No. 09-cv-4247, 2011 WL 1193028, at *2 (E.D. Pa. Mar. 30, 2011) (finding an individual's "implicit threat to kill" someone sufficient to support probable cause for charging the individual with Terroristic Threats); *Commonwealth v. Beasley*, 138 A.3d 39, 42–47 (Pa. Super. Ct. 2016) (upholding a defendant's conviction for Terroristic threats where he threatened to kill two police officers).

### d.  Resisting Arrest

Based on the Affidavit of Probable Cause, James was also charged with three counts of Resisting Arrest pursuant to PA. CONS. STAT. § 5104, which provides:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person

creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 PA. CONS. STAT. § 5104. Here, the facts contained in the reconstructed Affidavit show that there was at least a fair probability that James "create[d] a substantial risk of bodily injury" and/or "employ[ed] means justifying or requiring substantial force to overcome the resistance[.]" *Id.; see also Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa. Super. Ct. 1989) (stressing that § 5104 also contemplates guilt through "the disjunctive phrase 'or employs means justifying or requiring substantial force to overcome [the] resistance'").

The reconstructed Affidavit provides that James: (1) did not comply with verbal commands; (2) was tased once as a result; (3) grabbed and swung at Officers after Officer Garlock attempted to handcuff him; (4) swung his cane at Officer Garlock and struck him; (5) was tased a second time, but with no effect; (6) continued grabbing at the Officers after he was likewise pepper sprayed with no effect; and (7) was finally handcuffed after being restrained by three Officers.

These facts are sufficient to support a reasonable ground of suspicion that James resisted arrest by employing means that required substantial force to overcome his resistance. *See, e.g., Commonwealth v. Simmons*, No. 213 WDA 2020, 2021 WL 2394817, at *2, *4–5 (Pa. Super. Ct. June 10, 2021) (upholding a conviction for resisting arrest where the defendant resisted an Officer's attempt to handcuff him and "it took all three officers to take [the defendant] to the ground and get him handcuffed") (internal quotation omitted); *Commonwealth v. Hall*, No. 895 MDA 2016, 2017 Pa. Super. Ct. Unpub. LEXIS 3092, at *7–9 (Pa. Super. Ct. Aug. 16, 2017) (upholding a conviction for resisting arrest where the defendant did

not comply with an Officer's attempt to handcuff him, was tased for failure to comply with commands, and was ultimately handcuffed with the assistance of another Officer); *Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa. Super. Ct. 1989) (finding that "substantial force was [] required to overcome appellant's resistance to the arrest" where it took multiple Officers "to finally subdue appellant").

### e.  Disorderly Conduct

Further, James was charged with one count of Disorderly Conduct in violation of PA. CONS. STAT. § 5503(a)(1). (ECF No. 1-1 at 2). Pennsylvania's Disorderly Conduct statute provides that: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 PA. CONS. STAT. § 5503(a)(1).

The reconstructed Affidavit's allegation that James threatened to kill the Officers and yelled "[t]his is war" indicates a fair probability that he "engage[d] in . . . threatening[,]" thereby at least recklessly creating a risk of public alarm. *Id.* And the reconstructed Affidavit's allegation that James struck Officer Garlock with his cane and was swinging at Officer Garlock suggests he "engage[d] in fighting" under the Disorderly Conduct statute. The reconstructed Affidavit also provides that James "continued yelling and grabbing at the [O]fficer's [sic]" throughout the encounter. And, of course, this all took place in a public Dairy Queen.

These facts contained in the reconstructed Affidavit provide a sufficient basis to support a reasonable ground of suspicion that James engaged in disorderly conduct. *See, e.g.,*

*Phillips v. Alsleben*, No. 08-1388, 2011 WL 817166, at *22–23 (E.D. Pa. Mar. 7, 2011) (finding sufficient probable cause to charge the plaintiff under § 5503(a)(1) where the plaintiff swung at an Officer, struck an Officer, and the Officers had to take the plaintiff to the ground to effectuate their arrest in a public setting); *Commonwealth v. Qudoos*, No. 1983 EDA 2015, 2016 WL 5822424, at *2–3 (Pa. Super. Ct. Aug. 24, 2016) (upholding a defendant's conviction under § 5503(a)(1) where the defendant yelled at Officers, resisted an Officer's attempt to handcuff him, and continued yelling before eventually succumbing to the Officers in a public setting).

### f.  Summary Harassment

Finally, James was also charged with two counts of Summary Harassment pursuant to PA. CONS. STAT. § 2709(a)(1). (ECF No. 1-1 at 2). That provision provides that a "person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 PA. CONS. STAT. § 2709(a)(1).

The reconstructed Affidavit's allegation that James struck Officer Garlock with his walking cane clearly indicates a fair probability that James committed Summary Harassment, which forbids "strik[ing]" with the intent to harass. *Id.* And James's swinging at Officer Garlock provides a reasonable ground of suspicion that he was "attempt[ing]" to "do the same[.]" *Id.* Accordingly, the reconstructed Affidavit contains sufficient facts to support probable cause for charging James with Summary Harassment.

In sum, even when viewing the reconstructed Affidavit in the light most favorable to James, the Court finds that the facts contained therein support the conclusion that there was a reasonable ground of suspicion that James committed each of the six offenses with which he was

charged. Because the Court concludes that the reconstructed Affidavit "reasonably would not support a contrary factual finding[,]" *Sherwood*, 113 F.3d at 401, James cannot satisfy the third element of his § 1983 malicious prosecution claim—that Officer Garlock initiated criminal proceedings against him without probable cause. Accordingly, the Court will dismiss James's § 1983 malicious prosecution claim as asserted against Officer Garlock.

**B.  James's Fourteenth Amendment Fabricated Evidence Claim at Count II**

James brings his second § 1983 claim under the Fourteenth Amendment, alleging that Officer Garlock violated his due process rights by fabricating evidence used against him. (ECF No. 1 ¶¶ 74–83). More specifically, James contends that "falsified evidence was used to initiate criminal proceedings against him" and the Officers "were aware of the falsity of the evidence[.]" (*Id.* ¶¶ 80–81). "[A]bsent the falsified evidence by Defendants[,]" James argues, he "would not have been criminally charged." (*Id.* ¶ 78). Officer Garlock, for his part, counters that "James cannot establish [that] there is a reasonable likelihood that, absent Officer Garlock's alleged fabricated statements, he would not have been criminally charged." (ECF No. 15 at 19).

In *Halsey*, the Third Circuit left open the question of whether a plaintiff who was not convicted on the underlying charges, like James, could bring a viable fabricated evidence claim. *Halsey*, 750 F.3d at 294 n.19. But the Third Circuit later held that a "stand-alone fabrication of evidence claim can proceed if there is no conviction." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016).

To state such a claim, James must show that "there is a reasonable likelihood that, absent th[e] fabricated evidence, [he] would not have been criminally charged." *Id.* This "reasonable likelihood" standard "simply requires that [James] draw a 'meaningful connection' between [his]

particular due process injury and the use of fabricated evidence against [him]." *Id.* at 372 (quoting *Halsey*, 750 F.3d at 294 n.19). Further, "there is a notable bar for evidence to be considered 'fabricated.'" *Id.* In *Halsey*, the court explained:

> [T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. Therefore, for example, a witness's misidentification should not be regarded as a fabrication in the absence of persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith.

*Halsey*, 750 F.3d at 295.

Like James's malicious prosecution claim, his fabricated evidence claim revolves around his allegation that Officer Garlock knowingly provided false information to the affiant of the Affidavit of Probable Cause. However, as the Court explained above, the only false statement James has sufficiently alleged Officer Garlock made to the affiant is that James kicked him. Accordingly, the inquiry becomes whether James has sufficiently shown that "there is a reasonable likelihood that, absent" Officer Garlock's allegation that James kicked him, James "would not have been criminally charged." *Black*, 835 F.3d at 371.

At the outset, the Court notes that the Third Circuit has explained that it is "questionable" whether multiple "falsehoods or omissions in an affidavit"—let alone a singular falsehood—"can qualify as fabricated *evidence* for the purposes of a Fourteenth Amendment claim[.]" *Villarosa v. N. Coventry Twp.*, 711 F. App'x 92, 97 n.5 (3d Cir. 2017) (emphasis in original). But even assuming such a falsehood could form the basis of James's fabricated evidence claim, he has failed to show the requisite "meaningful connection" between Officer Garlock's false statement and his Fourteenth Amendment injury. *Black*, 835 F.3d at 371 (citing *Halsey*, 750 F.3d at 294 n.19).

As the Court found above, the reconstructed Affidavit—which omits Officer Garlock's allegation that James kicked him—is sufficient to support a finding of probable cause that James committed each offense with which he was charged. *See supra* Section V.A.3.iv. As a result, there can be no reasonable inference that, absent this falsehood, James "would not have been criminally charged." *Black*, 835 F.3d at 371; *Villarosa*, 711 F. App'x at 97 n.5 (affirming the district court's dismissal of the plaintiff's fabricated evidence claim because "there [was] no reasonable inference that, absent th[e] falsehoods and omissions [in the affidavit of probable cause]," the plaintiff "would not have been criminally charged[,]" where the "the truthful information remaining in the affidavit after excising all falsehoods and adding all omissions was sufficient to support a finding of probable cause that" the plaintiff committed the charged offense).

James's stand-alone fabricated evidence claim therefore fails, and the Court will grant Officer Garlock's motion to dismiss that claim as asserted against him.

**C.  James's § 1983 Conspiracy Claim at Count III**

James's third and final federal claim against Officer Garlock is asserted as a conspiracy claim pursuant to § 1983. (ECF No. 1 ¶¶ 84–92). To support that claim, James alleges that "Defendant Officers conspired to provide a false story about what actually transpired and bring false charges against" him. (*Id.* ¶ 86). Further, James contends that these "falsehoods were used to seize Plaintiff violating the Fourth Amendment and to fabricate evidence against him in the criminal proceeding in violation of the Due Process Clause of the Fourteenth Amendment." (*Id.* ¶ 89).

Officer Garlock, however, argues that James's § 1983 conspiracy claim is time-barred. (ECF No. 15 at 19). It is true, as Officer Garlock asserts, that James's conspiracy claim is governed by a two-year statute of limitations. *See Bartholomew v. Fischl*, 782 F.2d 1148, 1155 (3d Cir. 1986). According to Officer Garlock, because James alleges that he provided false information to the affiant on January 14, 2018, and James brought his § 1983 conspiracy claim on June 30, 2022—"almost four years after"—James's conspiracy claim is time-barred. (ECF No. 15 at 20).[20]

James's conspiracy claim finds its foundation in the two other § 1983 claims James asserts in his Complaint—malicious prosecution under the Fourth Amendment and fabricated evidence under the Fourteenth Amendment. The Third Circuit has clarified that a § 1983 conspiracy claim based on malicious prosecution does not accrue until the underlying claim accrues—i.e., upon the favorable termination of James's criminal case. *See Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989); *Wiltz v. Middlesex Cnty. Off. of the Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007) ("The statue of limitations on malicious prosecution claims 'does not begin to run until the underlying criminal proceedings are terminated in plaintiff's favor.' The same is true for civil rights conspiracy claims involving alleged malicious prosecution.") (quoting *Rose*, 871 F.2d at 348) (citation omitted).

And James's fabricated evidence claim, like his malicious prosecution claim, does not accrue until after the underlying criminal proceedings ended in his favor. *See McDonough v.*

---

[20] The Court notes that, as will be explained in text, while James's § 1983 conspiracy claim is not time-barred, it nonetheless fails because James has pled insufficient facts in support of his claim. But the Court addresses the statute of limitations issue here because whether James's § 1983 conspiracy claim is, in fact, time-barred informs the Court's analysis later in this Opinion with respect to whether granting James leave to amend his Complaint would be futile. *See infra* Section V.E.

*Smith*, 139 S. Ct. 2149, 2156 (2019) (explaining that the plaintiff "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"). Thus, James's conspiracy claim based on Officer Garlock's alleged fabrication of evidence also did not accrue until the charges against him were dismissed. *See Manivannan v. Cnty. of Ctr.*, No. 4:21-cv-1359, 2023 WL 173141, at *6 (M.D. Pa. Jan. 12, 2023) ("[C]laims for malicious prosecution and fabrication of evidence (and related conspiracy claims) accrue after the criminal proceedings have terminated in the plaintiff's favor.") (citing *Coello v. Dileo*, 43 F.4th 346, 253 (3d Cir. 2022)).

James's state charges were dismissed by the state court opinion, which was filed on May 24, 2021. (ECF No. 1-1 at 6). At that time, the statute of limitations on James's § 1983 conspiracy claim began to run. And James filed his Complaint in this case on June 30, 2022—well within the two-year statute of limitations. Therefore, because James's § 1983 conspiracy claim is not time barred, the Court turns its attention to whether James has plausibly pled the existence of a conspiracy to violate his civil rights.

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federal protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), *superseded by statute on other grounds, P.P v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009).

Here, as previously explained, James's conspiracy claim against Officer Garlock is tethered to the two alleged constitutional violations presented by his Fourth Amendment malicious prosecution claim and his Fourteenth Amendment fabricated evidence claim. But the Court has already found that James has failed to plausibly plead a violation of his

constitutional rights under either claim. Therefore, because a "conspiracy to engage in conduct that does not amount to a constitutional violation is not a violation of § 1983," James's conspiracy claim fails. *Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 109–10 (3d Cir. 2011); *see also Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995) ("We need not reach the issue of [§ 1983] conspiracy because we conclude that [the plaintiff's] complaint fails to allege a cognizable violation of his due process rights.").

Accordingly, the Court will grant Officer Garlock's motion to dismiss James's § 1983 conspiracy claim against him.

### D. James's State Law Malicious Prosecution Claim at Count IV

Finally, James asserts a state law malicious prosecution claim against Officer Garlock. (ECF No. 1 ¶¶ 93–99). In asserting this claim, James rests on the arguments undergirding his § 1983 malicious prosecution claim. (*Id.*). Officer Garlock argues, however, that James's state law malicious prosecution claim "is precluded by Pennsylvania's Political Subdivision Tort Claims Act[ (the "PSTCA").]" (ECF No. 15 at 22).[21] But the Court need not reach the immunity

---

[21] The Court also notes that Officer Garlock, in a sub-heading in his brief in support of his Motion, appears to assert that James's state law malicious prosecution claim is time-barred. (*See* ECF No. 15 at 22). However, Officer Garlock makes no argument on this point in the body of his brief. In any event, a malicious prosecution claim, under Pennsylvania law, must be commenced within two years. *See* 42 PA. CONS. STAT. § 5524(1). But a malicious prosecution claim does not accrue until the underlying proceedings are terminated in favor of the plaintiff. *See Cap v. K-Mart Discount Stores, Inc.*, 515 A.2d 52, 53 (Pa. Super. Ct. 1986). Accordingly, James's state law malicious prosecution claim accrued on May 24, 2021, when Judge Wagner dismissed all charges against him. (*See* ECF No. 1-1 at 6). Thus, he was well within the two year statute of limitations when he filed his Complaint in this matter on June 30, 2022, and his state law malicious prosecution claim is not time-barred.

issue regarding James's state law malicious prosecution claim at this time because he has failed to allege sufficient facts to support the viability of his claim.[22]

Under Pennsylvania law, "a party bringing a malicious prosecution claim must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) (citing *Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993)). As previously explained, James has not plausibly alleged that Officer Garlock initiated criminal proceedings against him without probable cause. Accordingly, James's state law malicious prosecution claim fails on the same basis as his § 1983 malicious prosecution claim, and the Court will grant Officer Garlock's motion to dismiss that claim.

## E.  Scope of Dismissal

When a district court dismisses one or more claims pursuant to Rule 12(b)(6), it must permit the plaintiff the opportunity to amend the complaint unless amendment would be inequitable or futile. *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* And the Third Circuit generally requires courts to grant leave to amend in

---

[22] As the Court will address in the next Section of its opinion, while Officer Garlock's PSTCA immunity argument is not relevant to the disposition of James's claim at this stage, whether Officer Garlock is, in fact, immune from a malicious prosecution claim under the PSTCA is relevant to whether granting James leave to amend his Complaint would be futile.

civil rights cases when a curative amendment is conceivable. *See Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

With respect to the three § 1983 claims James asserts in Counts I, II, and III of his Complaint—malicious prosecution, fabricated evidence, and conspiracy—the Court cannot conclude at this stage that granting James leave to amend would be inequitable or futile because a properly amended complaint could survive a motion to dismiss. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss."). Therefore, in recognition of the "liberal approach to pleading" embodied by Federal Rule of Civil Procedure 15, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) (citing Fed. R. Civ. P. 15), the Court will dismiss Counts I, II, and III of James's Complaint as asserted against Officer Garlock without prejudice and grant James leave to amend.

Finally, in determining whether granting James leave to amend his state law malicious prosecution claim at Count IV would be futile, the Court must assess Officer Garlock's argument that the PSTCA immunizes him from such a claim.

Local governments and their employees are generally immune from tort liability under the PSTCA. *See Rivera v. City of Bethlehem*, 855 F. App'x 79, 80 (3d Cir. 2021). Section 8541 of the PSTCA states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," except as otherwise provided in the PSTCA. 42 PA. CONS. STAT. § 8541.

Section 8545 further states that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are in the

scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by [the PSTCA]." *Id.* § 8545.

When, as here, an action is "brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee," the PSTCA grants the employee "[t]he defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law." *Id.* § 8546.

However, another provision of the PSTCA provides that "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply." *Id.* § 8550.

Because James brings his state law malicious prosecution claim against Officer Garlock in his individual capacity, (ECF No. 1 ¶ 8), § 8550 of the PSTCA applies, and Officer Garlock would not be immunized from liability if his actions constituted "actual malice or willful misconduct[.]" *Id.*; *Farrell v. Northampton Cnty.*, No. 11-cv-4665, 2015 WL 4611298, at *23 (E.D. Pa. July 31, 2015) ("The PSTCA does not shield an employee from liability in his individual capacity where his conduct constitutes a 'crime, actual fraud, actual malice, or willful misconduct.'") (quoting 42 Pa. Cons. Stat. § 8550).

As explained above, an element of James's state law malicious prosecution claim against Officer Garlock is that he initiated criminal proceedings against him with malice. Therefore, if James were to plausibly allege in an Amended Complaint that Officer Garlock acted with malice,[23] the PSTCA would not immunize Officer Garlock from James's state law malicious prosecution claim. *See, e.g., Milbourne v. Baker*, No. 11-cv-1866, 2012 WL 1889148, at \*39 n.18 (E.D. Pa. May 23, 2012) (explaining that where a plaintiff establishes "the existence of malice—the fourth element of [a] plaintiff's state-law malicious prosecution claim—the PSTCA's exception for willful misconduct would apply and the PSTCA would not bar [a] plaintiff's claim for malicious prosecution against [the defendant] in his individual capacity"). Therefore, because amendment would not be futile, the Court will dismiss Count IV of James's Complaint as asserted against Officer Garlock without prejudice and grant James leave to amend.

An appropriate order follows.

---

[23] The Court notes that, because James's Complaint fails to sufficiently allege that Officer Garlock initiated criminal proceedings against him without probable cause, the Court did not (and does not) determine whether James's Complaint plausibly pleads that Officer Garlock acted with malice.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL JAMES, *Administrator of the Estate of Harry James,* | ) ) ) | Case No. 3:22-cv-106 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| JOHN MARTIN BRANT and GREGORY ALLAN GARLOCK, | ) ) ) | |
| Defendants. | ) ) | |

## <u>ORDER</u>

**AND NOW**, this 2ND day of January, 2024, for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendant Gregory Allan Garlock's Motion to Dismiss at ECF No. 14 is **GRANTED**.

**IT IS FURTHER ORDERED** that James's Complaint, (ECF No. 1), is **DISMISSED WITHOUT PREJUDICE** as asserted against Defendant Garlock. James has twenty-eight days from the entry of this order to file an amended complaint with respect to all claims contained in his initial Complaint.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**